THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JAMES K. MORRIS,<br><br>                    Plaintiff,<br><br>v.<br><br>ALEJANDRO N. MAYORKAS, Secretary,<br>United States Department of Homeland<br>Security<br><br>                    Defendant. | **MEMORANDUM DECISION AND<br>ORDER GRANTING [26]<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Case No. 2:21-cv-00725-DBB-DBP<br><br>District Judge David Barlow |

Before the court is Defendant Alejandro N. Mayorkas's motion for summary judgment in his official capacity as Secretary of Homeland Security ("the Agency"), seeking dismissal of Plaintiff James K. Morris's Title VII claims for gender discrimination and retaliation.[1] For the following reasons, the court grants the Agency's motion.

## BACKGROUND

This case concerns Mr. Morris's demotion within the Transportation Security Agency ("TSA"). From September 2002 to June 2020, Mr. Morris worked for the TSA.[2] At some point prior to the period relevant to this case, Mr. Morris was promoted from a line transportation security officer ("TSO") to be a supervisory transportation security officer ("STSO").[3] Mr. Morris suffers from bipolar disorder and Parkinson's disease,[4] and he filed administrative

---

[1] Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 26.
[2] Decl. of Robert Brown ¶ 5, ECF No. 26-2.
[3] *Id.*
[4] Aff. of James Morris ("Morris Aff.") ¶¶ 5–6, ECF No. 26-6.

complaints related to his disabilities in 2012 and 2015.[5] Both disputes were settled outside of court.[6]

In May or June 2018, an envelope, which contained a picture of a woman's breasts, was placed on Mr. Morris's desk.[7] Mr. Morris believed that the photo was of his supervisor, Ms. Krystal Green.[8] Mr. Morris kept the photo in his work locker and showed it to at least one coworker.[9]

In July 2018, Ms. Green complained to TSA management that another employee had engaged in sexual harassment towards her.[10] Mr. Dennis Stanley was appointed to investigate Ms. Green's complaint.[11] Mr. Stanley interviewed Mr. Morris as part of this investigation.[12] Mr. Stanley asked Mr. Morris whether he knew of any officer or employee that had a photo of Ms. Green's breasts, to which Mr. Morris replied that he had no direct knowledge.[13] Mr. Stanley then interviewed Ms. Shelly Maynard, who claimed that Mr. Morris had shown her the photo from the envelope.[14] Mr. Stanley confronted Mr. Morris and asked him to retrieve the photo from his locker; Mr. Morris did so.[15] Mr. Stanley interviewed Mr. Morris a second time, and Mr. Morris described the circumstances of receiving the photo, admitted to telling Ms. Maynard about the

---

[5] *See* Prior EEO Complaints & Materials, ECF No. 26-22.
[6] *Id.*
[7] *See* Record of 2nd Interview with James Morris 2, ECF No. 26-5.
[8] *Id.*
[9] Morris Aff. ¶ 33, ECF No. 26-6.
[10] *See* Interoffice Memorandum, ECF No. 26-10.
[11] Decl. of Dennis Stanley ("Stanley Decl.") ¶ 5, ECF No. 26-3.
[12] *Id.* ¶ 8.
[13] Record of Interview with James Morris 2, ECF No. 26-4.
[14] Stanley Decl. ¶ 9; Record of Interview with Shelly Maynard 2, ECF No. 26-8.
[15] Stanley Decl. ¶ 10.

photo, and stated that he did not believe he showed it to her.[16] Mr. Morris later stated that he had

showed Ms. Maynard the photo, as she was present when he received it.[17]

Mr. Morris's manager, Mr. Christopher DeVito, recommended terminating Mr. Morris

because he had kept the photo without reporting it and had told Mr. Stanley that he lacked

knowledge of it, among other things.[18] TSA's Assistant Federal Security Director for Screening,

Mr. Russell Sitz, reviewed the issue and terminated Mr. Morris on December 21, 2018.[19] Mr.

Sitz was aware of Mr. Morris's prior Equal Employment Opportunity ("EEO") complaints.[20] Mr.

Morris appealed his termination to an administrative tribunal, and on February 26, 2019, Mr. Sitz

rescinded Mr. Morris's termination.[21] Two individuals from outside the Salt Lake City office

were then assigned Mr. Morris's case: Mr. Donald Wilson and Ms. Diane Davis-Marley.[22] Mr.

Wilson recommended that Mr. Morris be demoted from his position as an STSO to a TSO.[23] Ms.

Davis-Marley agreed and issued the demotion on May 20, 2019.[24] Neither Mr. Wilson nor Ms.

Davis-Marley knew that Mr. Morris had ever filed a prior EEO complaint.[25]

On December 6, 2018, Mr. Morris filed an administrative complaint against the Agency,

alleging that various adverse employment actions were the result of disability discrimination and

retaliation.[26] The stated basis for the complaint was that Mr. Morris's "medical conditions [were]

---

[16] Record of 2nd Interview with James Morris 2.
[17] Morris Aff. ¶ 33; Email from James Morris to Donald Wilson, ECF No. 26-7.
[18] *See* Notice of Proposed Removal 1–2, ECF No. 26-14.
[19] *See* Notice of Decision on Proposed Removal, ECF No. 26-15.
[20] Aff. of Russell Sitz ("Sitz Aff.") ¶¶ 12–13.
[21] Compl. ¶¶ 46–47; Russell Sitz Aff. ¶¶ 23–24, ECF No. 26-16.
[22] Aff. of Donald Wilson ("Wilson Aff.") ¶ 11, ECF No. 26-18; Aff. of Diane Davis-Marley ("Davis-Marley Aff.") ¶ 11, ECF No. 26-19.
[23] Notice of Proposed Demotion, ECF No. 26-20.
[24] Notice of Decision on Proposed Demotion, ECF No. 26-21.
[25] Wilson Aff. ¶ 9; Davis-Marley Aff. ¶ 9.
[26] Individual Compl. of Employment Discrimination, ECF No. 26-23.

brought up again."[27] Mr. Morris amended his complaint to include new adverse employment actions, such as his final demotion.[28] On August 11, 2021, an administrative law judge ("ALJ") with the Equal Employment Opportunity Commission ("EEOC") granted the Agency's motion for summary judgment on Mr. Morris's administrative complaint.[29] And on September 8, 2021, the Department of Homeland Security adopted the ALJ's decision.[30] On December 13, 2021, Mr. Morris appealed the Agency's decision to this court.[31] The Agency moved for summary judgment, and the motion was fully briefed on January 29, 2024.[32]

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33] "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."[34] When the moving party does not bear the ultimate burden of proof at trial, the moving party satisfies its initial burden by pointing out the lack of evidence to support the nonmoving party's case.[35] If the moving party carries its initial burden, the burden then shifts to the nonmoving party to demonstrate that there is a genuine dispute of material fact for trial.[36]

---

[27] *Id.*
[28] *See* Amendments, ECF No. 26-24.
[29] Order Granting Agency's Mot. for Decision Without a Hearing, ECF No. 26-25.
[30] Final Order, ECF No. 26-26.
[31] Compl.
[32] *See* Def.'s Mot.; Pl.'s Mem. In Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 30; Def.'s Reply Brief in Support of His Mot. for Summ. J., ECF No. 35.
[33] Fed. R. Civ. P. 56(a).
[34] *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)).
[35] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[36] *See id.* at 324.

## DISCUSSION

### I.   Title VII – Gender Discrimination

"Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin[.]"[37] The Agency argues that Mr. Morris failed to exhaust his administrative remedies related to a gender discrimination claim, and that Mr. Morris lacks evidence to establish a case of gender discrimination.[38]

"Before a federal civil servant can sue his employer in court for discriminating against him in violation of Title VII, he must first exhaust his administrative remedies."[39] The EEOC has promulgated regulations setting forth a federal employee's exhaustion requirements.[40] One such requirement is that the employee file a complaint with the agency that includes a statement that generally describes the actions or practices that form the basis of the complaint.[41] After the agency has reached a decision, it must issue a final order and send the complainant a letter notifying him of the right to file suit in federal court.[42] "A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter."[43] Put another way, after the plaintiff receives notice of his right to sue, "that plaintiff's claim in court 'is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of

---

[37] *Green v. Brennan*, 578 U.S. 547, 549 (2016) (citations omitted); *see* 42 U.S.C. § 2000e-2(a).

[38] Def.'s Mot. 11–14, 19–21, 23–25.

[39] *Green*, 578 U.S. at 552 (citing 42 U.S.C. § 2000e-16(c)).

[40] *See id.* at 553; *see also* 29 C.F.R. §§ 1614.101–1614.707. Notably, "[t]his regulatory exhaustion requirement is not a jurisdictional prerequisite for suit but is a claims-processing rule that the employer may raise as an affirmative defense." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020). The Agency raised an exhaustion defense in its Answer. *See* Answer 12–13, ECF No. 16.

[41] 29 C.F.R. § 1614.106(c).

[42] *Id.* § 1614.110(a), (b).

[43] *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004)).

discrimination submitted to the EEOC."[44] "The exhaustion rule derives from two principal purposes: '1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance.'"[45]

The Agency argues that although Mr. Morris did file a complaint with the EEOC, he did not raise gender discrimination in that complaint.[46] Therefore, he failed to exhaust this claim.[47] Mr. Morris argues that his gender discrimination claim is "reasonably related" to his disability discrimination and retaliation claims.[48]

Here, Mr. Morris filed a complaint with the Agency on December 6, 2018.[49] On the form, in response to the instruction to mark the bases relied upon in taking the adverse employment action at issue, Mr. Morris checked only the boxes for "physical or mental disability" and "retaliation/reprisal."[50] He did not check the box for "sex."[51] As the Agency points out, "[t]he failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box," and that the presumption "may be rebutted, however, if the text of the charge clearly sets forth the basis for the claim."[52] The text of the administrative complaint is sparse. Mr. Morris asserts that the discriminatory action taken against him was his "duty status

---

[44] *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quoting *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)); *accord Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1171 (10th Cir. 2020).
[45] *Smith*, 904 F.3d at 1164 (quoting *Ingles v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994)).
[46] *See* Def.'s Mot. 13–14.
[47] *Id.*
[48] Pl.'s Opp'n 25.
[49] Individual Compl. of Employment Discrimination.
[50] *See id.* at ¶ 16.
[51] *Cf. id.*
[52] *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (discussing exhaustion for purposes of the Americans with Disabilities Act).

6

update form," and the differential treatment he identifies was that "medical conditions [were] brought up again."[53] Mr. Morris also amended his administrative complaint several times to specify the actions complained of, up to and including his final demotion.[54] The notices from TSA confirming receipt of the amendments note that the discrimination alleged was "harassment on the bases of disability (mental and physical) and reprisal."[55] Nowhere does Mr. Morris identify the gender-based differential treatment he identifies in this lawsuit—that, with regard to the nude photograph, he was allegedly treated differently than Ms. Green.[56] And the EEOC order granting the Agency's motion for summary judgment focused entirely on Mr. Morris's disability claims.[57] While the ALJ discussed the underlying conduct at issue, which included Mr. Morris's showing a nude photo of Ms. Green to other employees,[58] there is nothing to suggest that the ALJ was given the opportunity to rule on a gender discrimination claim.

Mr. Morris merely asserts that his gender discrimination claim "seems reasonably related to" his disability discrimination and retaliation claim.[59] The only apparent basis for this assertion is that the adverse actions complained of are "essentially the same."[60] Even if that is true, that does not mean that the charge of gender discrimination could be reasonably expected to grow out of the prior EEOC investigation. Put another way, how, on this record, was the EEOC to know that gender discrimination was at issue? Mr. Morris does not say. The implication of Mr. Morris's argument is that the EEOC would be expected to investigate every possible basis of

---

[53] Individual Compl. of Employment Discrimination ¶ 15.
[54] *See* Amendments.
[55] *Id.*
[56] *See* Compl. ¶ 67.
[57] *See* Order Granting Agency's Mot. for Decision Without a Hearing.
[58] *See id.* 5–7.
[59] Def.'s Opp'n 25.
[60] *Id.* at 26.

discrimination stemming from any one discrete adverse employment action, regardless of how he described his complaint. The law does not require this.

In sum, there is no genuine dispute of fact that Mr. Morris did not identify a gender discrimination claim in his administrative complaint. He did not check the box indicating a gender discrimination claim, did not describe a gender discrimination claim in the text of his complaint and, in the underlying action, stated that he "agrees with how the Agency has identified the list of accepted issues"—which did not include gender discrimination.[61] No reasonable jury could conclude other than that Mr. Morris failed to exhaust his administrative remedies for such a claim. Accordingly, because summary judgment in favor of the Agency is warranted on the issue of non-exhaustion, the court need not reach the merits of this claim.

## II.   Title VII – Retaliation

Title VII makes it unlawful for an employer "to discriminate against any individual . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the subchapter."[62] "Where the plaintiff seeks to prove a Title VII retaliation claim through indirect or circumstantial evidence, the burden-shifting analysis of *McDonnell-Douglas Corp. v. Green* applies.[63] The parties agree that the *McDonnell-Douglas* burden shifting framework applies to Mr. Morris's claim for retaliation.[64] Under this framework, the plaintiff must first establish a prima facie case of retaliation, which requires: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would

---

[61] Complainant's Memo. in Opp'n to the Agency's Mot. for Summ. J. 1, ECF No. 30-2.
[62] 42 U.S.C. § 2000e-3(a).
[63] *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009) (citations omitted) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).
[64] *See* Def.'s Mot. 15; Pl.'s Opp'n 27.

have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[65] If the plaintiff makes out a prima facie case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action."[66] Finally, "[i]f the employer articulates a legitimate reason for the action, then the plaintiff must demonstrate that the employer's asserted reasons are pretextual."[67]

The Agency concedes the first and second elements of Mr. Morris's prima facie case.[68] Mr. Morris filed prior EEO complaints in 2012 and 2015[69] and he was demoted from an STSO to a TSO.[70] Accordingly, the only issue is whether Mr. Morris's demotion from STSO to TSO in 2019 was causally connected to his prior protected EEO activity.

"To establish a causal connection, a plaintiff must 'present evidence of circumstances that justify an inference of retaliatory motive.'"[71] The Agency argues that the decisionmakers responsible for Mr. Morris's demotion—Mr. Wilson and Ms. Davis-Morley—did not know of Mr. Morris's prior EEO activity, and therefore could not have retaliated against him for that activity.[72] Mr. Morris does not dispute the fact that neither Mr. Wilson nor Ms. Davis-Morley knew about the prior EEO activity.[73] Instead, Mr. Morris argues that local management kept that and other information from Mr. Wilson and Ms. Davis-Morley in an effort to guide their

---

[65] *Pinkerton*, 563 F.3d at 1064 (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).
[66] *Id.* (quoting *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004)).
[67] *Id.* (quoting *Meiners*, 359 F.3d at 1229).
[68] Def.'s Mot. 19.
[69] *See* Prior EEO Complaints & Materials.
[70] Notice of Decision on Proposed Demotion.
[71] *Bekkem v. Wilke*, 915 F.3d 1258, 1271 (10th Cir. 2019) (quoting *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)).
[72] Def.'s Mot. 21.
[73] *See* Pl.'s Opp'n 17, 29.

decisionmaking.[74] That argument is immaterial to the question of causation. Whether or not it is true that local management shared only facts that might lead to a higher punishment does not suggest that Mr. Wilson and Ms. Davis-Morley demoted Mr. Morris because of his prior EEO activity.

Because the undisputed material facts show that the decisionmakers responsible for Mr. Morris's demotion did not know of his prior EEO activity, the court finds that Mr. Morris has failed to carry his burden in making out a prima facie case of retaliation. Therefore, the court need not reach the remainder of the *McDonnell-Douglas* framework.

## ORDER

The court GRANTS Defendant's motion for summary judgment.[75]

Signed June 24, 2024.

BY THE COURT

_____
David Barlow
United States District Judge

---

[74] *Id.* at 29.
[75] ECF No. 26.